# THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:10cv254

| | | |
|---|---|---|
| JOYCE S. MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 7] and the Defendant's Motion for Summary Judgment. [Doc. 11].

## I.   PROCEDURAL HISTORY

The Plaintiff Joyce Morgan filed applications for a period of disability and disability insurance benefits and for Supplemental Security Income on September 26, 2007 alleging that she had become disabled as of December 31, 2000.  [Transcript ("T.") 118].   The Plaintiff's applications were denied initially and on reconsideration.  [T. 73-76, 79-82, 83-5].  A hearing, at which a vocational expert appeared and testified, was held before Administrative

Law Judge ("ALJ") S.D. Schwartzberg on December 15, 2008. [T. 14-50]. On

August 6, 2009, the ALJ issued a decision denying the Plaintiff benefits. [T.

58-68]. The Appeals Council accepted additional evidence but denied the

Plaintiff's request for review, thereby making the ALJ's decision the final

decision of the Commissioner. [T. 8-10]. The Plaintiff has exhausted her

available administrative remedies, and this case is now ripe for review

pursuant to 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to

(1) whether substantial evidence supports the Commissioner's decision, see

Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d

842 (1971), and (2) whether the Commissioner applied the correct legal

standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court

does not review a final decision of the Commissioner de novo. Smith v.

Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the

[Commissioner] as to any fact, if supported by substantial evidence, shall be

conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined

"substantial evidence" as "more than a scintilla and [doing] more than

creat[ing] a suspicion of the existence of a fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below.  Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III.    THE SEQUENTIAL EVALUATION PROCESS FOR CHILD CLAIMS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process.  20 C.F.R. §§ 404.1520, 416.920.  If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant.  20 C.F.R. §§ 404.1520, 416.920.  Second, the claimant must show a severe impairment.  If the claimant does not show any impairment or combination thereof which significantly limits the claimant's

3

physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled.  Id.  Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id.  Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past.  If the claimant can still perform that work, then a finding of not disabled is mandated.  Id.  Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work.  If so, then the claimant is not disabled.  Id.

## IV.    FACTS AS STATED IN THE RECORD

Plaintiff was 52 years old at the time of her hearing and had graduated high school and earned a CNA certificate, even though it was then expired. [T. 18].  The Plaintiff's date last insured (DLI) was June 30, 2005. [T. 17]. She claimed to be disabled by cervical sprain from auto accidents in 1993 and

2007,[1] fibromyalgia, depression, sleep apnea, diabetes, anxiety, bipolar disorder and high blood pressure.  [T. 173].

Plaintiff's medical records for the period prior to onset through the date of her hearing reflect the conditions she described as well as pain resulting from those conditions.  Furthermore, Stage I obesity was diagnosed on February 8, 2005. [T. 314].  With regard to bipolar disorder, however, there is no evidence in the record except for the period well after her date last insured. A psychological evaluation performed by Michael Murray, D.O., Ph.D. on September 13, 2007 demonstrates that Plaintiff denied "most [bipolar] symptoms such as spending sprees, aggression, and self-destructive impulsivity [other than] starting to use crack about five years ago."  [T. 290-91].  He diagnosed "mood disorder NOS, prob MDD, recurrent, moderate," but ruled out doubtful bipolar affective disorder, type II.  He also diagnosed cocaine dependence in early remission, but ruled out marijuana dependence. He recommended Neurontin or Lyrica for pain; exercise; and counseling.  [T. 291].

---

[1]On the date of her latter auto accident, which appears to have been January 6, 2008, she went to the Emergency Room but left without being seen because there was a long line.  The next day, she returned with "somewhat global discomfort," no specific neck pain, a moderate headache and chest soreness.  A CT scan of her neck showed no acute abnormality, but multilevel cervical spondylosis.  [T. 241-44].

Plaintiff asserted that she has difficulty concentrating and remembering; that she has constant body aches; that her feet are numb and painful; and that her back, neck and arms are in pain all the time. [T. 154]. She stated that her sleep quality is very poor. [T. 188].

Medical records demonstrate her consistent non-compliance with treatment recommendations to exercise [T. 377, 370, 382, 380, 322, 314], lose weight [T. 372, 380, 314], get counseling [377, 326, 315, 308], use her C-PAP machine as instructed [T. 372, 374, 382, 381, 380, 379, 378 (non-use although she felt better with it), 314 (non-use for 5 years)], and use various medications [T. 369  316]. At least once, she asked to be taken off of medications that admittedly helped her. [T. 309]. In March 2010, she claimed to be allergic to nine medications, most of which she had taken for years, according to other records.[2] [T. 553]. Cocaine abuse was first noted in March 2006, through a positive urine test, and was treated for a period. [T. 280, 280-306]. Plaintiff's behavior and appearance were normal at her initial application interview. [T. 151].

Plaintiff's sister indicated in a Third Party Function Report that Plaintiff cries, complains of pain, talks excessively, has flu symptoms, cooks small

---

[2]A mere two months earlier, she claimed an allergy to just one medication. [T. 562].

meals, does chores 45 minutes per day, and visits with her two hours per day five days per week. [T. 161, 163]. She reported that Plaintiff could follow written and spoken instructions well. [T. 166]. A neighbor's lay statement dated July 27, 2010[3] indicated that in the recent five to six years, Plaintiff's condition had deteriorated sharply to where she did not walk for exercise, could not perform laundry, dishes or vacuuming, and could not stand more than five minutes due to leg pain from fibromyalgia and diabetic neuropathy. [T. 192]. Plaintiff's husband testified that her behavioral limitations in 2002 were due to drug use [T. 44], and that her depression and inability to finish tasks she started had been ongoing since 1992. [T. 45].

At the time of the ALJ hearing, Plaintiff weighed approximately 250 pounds. Medications including Seroquel and Actos caused weight gain. [T. 21]. After her claimed date of onset in 2000, she made two unsuccessful work attempts as a CNA, including one for five to six months in 2007. [T. 22-25]. In 1989, she lost a full term baby, the second child she had lost. She and her husband ceased sleeping in the same bedroom and remained apart for twenty years. [T. 28]. She left his home several times [T. 35], once taking up with a boyfriend and using crack cocaine with him for about a year. [T. 32]. She had

_____

[3] This statement was in the form of a letter that was submitted to the Appeals Council as part of the supplementary evidence provided after the ruling by the ALJ.

a brief period of counseling in 2002 related to family issues. [T. 29]. For her elderly parents, she filled their medications, took them to the grocery store, and paid bills. She did not obtain psychiatric care because she had lost insurance two years before her hearing. [T. 20].

Plaintiff testified that she could not get out of bed, or get along with anyone. She has no friends, and her family calls her crybaby and drama queen. [T. 41]. She stated that her husband's loss of income was the event that triggered her application for disability. [T. 42].

## V. THE ALJ'S DECISION

On August 6, 2009, the ALJ issued a decision denying the Plaintiff benefits. [T. 58-68]. Proceeding to the sequential evaluation, the ALJ found that Plaintiff's date last insured was June 30, 2005, and that she had not engaged in substantial gainful activity since December 31, 2000, the alleged onset date, notwithstanding having participated in significant activity after that date. [T. 60]. The ALJ then determined the following severe impairments:

> complaints of pain and problems with functionality associated with a past diagnosis of fibromyalgia and with cervical strain; complaints of breathing difficulties, with apparent continuing use/abuse of tobacco (this despite notations at times in the record of ceasing smoking, but later the claimant showing herself continuing to use tobacco) and with indications of obstructive sleep apnea, treated with CPAP

8

machine; diabetes and hypertension; morbid obesity; and mood disorder, with apparent treatment for bipolar features, anxiety, and histrionic personality, together with indications of drug abuse involving use of cocaine and of marijuana.

The ALJ concluded that her impairments did not meet or equal a listing. [T. 61]. He found that Plaintiff had the residual functional capacity (RFC) to perform light work, limited to simple, routine, repetitive routine tasks while avoiding public contact but maintaining frequent interaction with supervisors and coworkers. [T. 63]. She could not perform her past relevant work. [T. 66]. Considering her age[4], education, work experience and RFC, there were jobs in significant numbers in the national economy that she could perform. [T. 66]. Accordingly, the ALJ concluded that the Plaintiff was not disabled from December 31, 2000 through the date of his decision. [T. 67].

## VI. DISCUSSION

Plaintiff asserts three assignments of error. She complains that the ALJ "improperly disregarded" the opinion of Joseph H. Lanier, Ph.D. and improperly assessed both her residual functional capacity and her credibility. For the reasons stated below, the Court concludes that there was no error.

---

[4]The ALJ noted that her age classification changed from younger individual to closely approaching advanced age during the claim period. [T. 66].

**A.** **The ALJ's assignment of weight to opinion evidence was supported by substantial evidence.**

It is difficult to ascertain the legal issue Plaintiff seeks to raise regarding the ALJ's treatment of the opinion of Dr. Lanier, who performed a one-time neuropsychological evaluation of Plaintiff on December 4, 2008, shortly before her ALJ hearing. [See T. 516-544]. Plaintiff's brief on this point consists of one lengthy paragraph recounting how Dr. Lanier's opinion is very persuasive, as though it were in the province of this Court to find facts regarding the issue of disability and for such findings to serve as a basis for overruling the ALJ. The Court, however, may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision. Hays, 907 F.2d at 1456 The Court must limit its review to whether the ALJ's treatment of Dr. Lanier's opinion was consistent with the law and is supported by substantial evidence.

As to the issue of disability, Plaintiff has the burden of proof. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1502; English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993). She can meet that burden by presenting findings and opinions of licensed psychologists as to how her mental impairments impose limitations on her work functions. SSR 06-03p. The ALJ is to consider all such evidence, weighing it in the manner set out at 20 C.F.R. § 404.1527.

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion: (1) Examining relationship; (2) Treatment relationship; (i) Length of the treatment relationship and the frequency of examination.(ii) Nature and extent of the treatment relationship.

20 C.F.R. § 404.1527(d). In weighing such opinions the ALJ is to consider whether they are supported by objective medical or laboratory findings and whether they are consistent with the record as a whole. See 20 C.F.R. § 404.1527. Plaintiff apparently complains that the ALJ weighed the opinion of Dr. Lanier improperly, thus causing the ALJ to commit error in disregarding it. [Doc. 8 at 6-7].[5]

In his report, Dr. Lanier prefaced his findings by stating that he was asked to evaluate whether Plaintiff's psychological or neuropsychological status "adversely affect[s] abilities required for maintaining an independent, productive personal, social or work life." [T. 516]. He performed several procedures and tests on the Plaintiff. [T. 517]. He diagnosed Bipolar II Disorder, Depressed; Somatization Disorder; Nicotine Dependence; Cannibis

---

[5]It is noted that Plaintiff's brief misidentifies the full extent of Dr. Lanier's report, omitting references to the pages containing Dr. Lanier's Medical Source Opinion (Mental). [Doc. 8 at 6].

and Cocaine Abuse, Sustained Full Remission; and Dependent Personality

Disorder.  He noted a Global Assessment of Functioning (GAF) score of 45

and made findings of vague import including "inadequate personal resources"

and "loss of functional capacities."  [T. 522].  Dr. Lanier evaluated Plaintiff via

the Psychiatric Review Technique (PRT).  [T. 527-40].  He made "paragraph

B" findings,[6] noting that her limitations were "Extreme" in three of the four

functional areas, with only restrictions of activities of daily living rated lower,

as "Marked." [T. 537].  He found that she met Listings 12.02 (organic mental

disorders), 12.04 (affective disorders), 12.07 (somatoform disorders) and

12.08 (personality disorders).  See 20 C.F.R. Pt. 404, Subpt. P, App'x 1,

Listing 12.00.  Accordingly, he filled out a Medical Source Opinion (Mental)

noting that out of 20 specific "mental activities," Plaintiff was "Severely

Limited" in thirteen areas and "Moderately Severely Limited" in the remaining

seven, and that the indicated level of severity had existed since 2002.

Dr. Lanier noted that Plaintiff had a restricted range and intensity of

affect, was oriented to time, place, person and situation.[7]  She displayed no

psychosis, thought disorders, ideas of reference, flight of ideas or loose

---

[6] I.e., pertaining to the criteria of paragraph B of the identified Listings.

[7] Dr. Lanier also reported a score on the Folstein Mental Status Examination, or "MMSE," the significance of which to proof of disability was not explained.  [T. 517].

associations.  Her own acknowledgment of drug abuse and her responses to screening suggested that she ceased using drugs of abuse in 2005, and was annoyed by criticism of her drug abuse. [T. 518].  Subjectively, she reported that her husband helped with or performed all household chores.  She was inactive socially. [T. 518].  She demonstrated limited ability to use available resources to solve social problems, which Dr. Lanier noted could connote limitations on responses to supervision.  She demonstrated the loss of ability to initiate daily activities.  [T. 519].  Dr. Lanier included several conclusory statements, presenting no support in his findings, such as "the ability to work in coordination with or in proximity to other without being distracted is limited." [T. 518].

Dr. Lanier's report was not stated in terms that articulated work functions or limitations thereon. [T. 518-22].  No capacity measured was rated lower than "below average" or "below normal limits,"  except abilities to understand, remember and execute detailed instructions, which were rated as severely limited.  [T. 520].

The ALJ introduced his analysis of the Lanier report by noting that it was procured at Plaintiff's counsel's[8] request.  He noted that it stemmed from a

---

[8]A different attorney was representing her at that time.

one-time evaluation. He pointed out the several mild and normal mental exam findings from the report. He noted inconsistencies between her reports of drug abuse and household chore performance to Dr. Lanier versus what she told other providers. [T. 65]. The ALJ further noted that Plaintiff had no mental health counseling (in spite of repeated suggestions to obtain it), other than a few visits over a two month period during 2002. [T. 436-7, 377, 326, 315, 308]. These were permissible considerations for the ALJ to make in determining the amount of weight to assign Dr. Lanier's opinion.

Overall, the lengthy report offered limited objective information helpful to the ALJ on issues relevant to disability as defined in the Act. In fact, the report itself reflects that Dr. Lanier was seeking to answer a question very different from what was relevant to this inquiry before the ALJ. [T. 516]. The ALJ's consideration of Dr. Lanier's opinions and report were wholly consistent with the requirements of 20 C.F.R. § 404.1527. [T. 516]. After the ALJ rendered his decision, Dr. Lanier submitted a "Response" thereto. [T. 549-51]. The Appeals Council considered this response, but upheld the decision without specific analysis thereof. Plaintiff fails to articulate how this "Response" by Dr. Lanier demonstrates any greater limitations than the ALJ found. None are apparent to the Court.

The ALJ's decision to give little weight to the Lanier opinion was consistent with the law and is supported by substantial evidence. This assignment of error is overruled.

**B.** **The ALJ's assessment of residual functional capacity followed applicable law and is supported by substantial evidence.**

Plaintiff assigns error to the fact that the ALJ "determined that the Plaintiff can perform generally light level work with some restrictions." [Doc. 8 at 8-9]. She goes on to recite a page and a half of mental health treatment for impairments and limitations therefrom. In so doing, Plaintiff does not analyze that evidence but simply concludes that "the totality of the evidence and particularly the mental health evidence submitted to the Appeals Council" reveals clear error. [Doc. 8 at 9-10].

At step four, the ALJ assessed Plaintiff's residual functional capacity (RFC). He discussed medical evidence from Dr. Amy Rehfield, Dr. Anthony Carraway, Dr. J.H. Lanier, and Dr. Gloor. [T. 64-5]. He noted the greater degree of useful detail provided in the State Agency physician's notes about relevant disabling limitations than provided by Plaintiff's treating physicians. [T. 64]. He also discussed Plaintiff's testimony and evidence from her sister. [T. 63-64]. In so doing, he noted internal contradictions within her own testimony, as well as conflicts between that testimony and her reports to

physicians and their objective observations. He also discussed evidence about her compliance with medical treatment recommendations. [T. 63-65]. He resolved conflicts within the evidence, and made a credibility determination. [T. 65].

After these considerations, the ALJ made the following specific finding:

> After careful consideration of the entire record, the undersigned finds that the claimant has retained the residual functional capacity during the period of alleged disability to perform at least generally light level work function/duties, as defined in 20 CFR 404.1567(b) and 416.967(b). She is further restricted to only performing/engaging in simple, routine, repetitive work activities/duties. And Ms. Morgan should avoid contact/interaction with the general public on the job, though she can frequently interact with coworkers and supervisors when working. Within her noted restrictions and limitations this claimant should be able to concentrate and focus as needed to sustain herself on the job and in the workplace in order to complete successfully normal eight hour work days/five day work weeks.

[T. 63]. In light of this extensive and specific list of additional limitations on Plaintiff's mental work functions, it is difficult for the Court to ascertain the nature of Plaintiff's complaint with it. Plaintiff specifically states that she is challenging the finding that she is able to perform light work, but argues that it is inconsistent with the evidence of her mental impairments. "Light work," however, is an Agency phrase declaring a particular degree of exertional, or

16

strength, capacity for work. SSR 96-8p, 1996 WL 374184 at *1. To prove a more restrictive exertional capacity than what the ALJ found, Plaintiff must demonstrate evidence of greater exertional limitations. All of Plaintiff's ensuing recitation of evidence (except for two sentences), however, relates to mental impairments. [Doc. 8 at 9-10]. The limitations caused by mental impairments are generally non-exertional. SSR 96-8p, 1996 WL 374184 at *6. Plaintiff makes no claim that the described mental impairments have any exertional impact. As such, the mental impairment evidence recited is irrelevant to Plaintiff's asserted assignment of error.

Plaintiff's very brief point about physical impairments is also insufficient. She asserts only that Drs. Gloor and Ladd treated her for pain and symptoms from a variety of ailments including fibromyalgia and back pain. She does not, however, suggest any limitations therefrom that might suggest greater restrictions than accounted for in a limitation to light work. In fact, Plaintiff offers no more specificity than to point the Court toward the veritable haystack of Dr. Gloor's 35 pages and Dr. Ladd's 92 pages of records. [Doc. 8 at 9]. Plaintiff, however, fails to produce any needle therefrom for the Court to examine.

Plaintiff has shown no defect in the manner in which the ALJ arrived upon his findings regarding the Plaintiff's RFC, and that finding is supported by substantial evidence. This assignment of error is overruled.

**C. The ALJ properly assessed Plaintiff's pain and symptom evidence, and his finding as to credibility is supported by substantial evidence.**

For her last assignment of error, Plaintiff says that the ALJ "erred as a matter of law in evaluating the Plaintiff's subjective complaints and issuing a credibility finding against her, without support in the record, and further, under the circumstances of this case, not calling a medical expert to evaluate the evidence and assist the Court." She offers not one further word in support of this notion. [Doc. 8 at 11]. Plaintiff's argument of this point literally consists of one sentence.

Defendant's brief patiently and sufficiently explains that no duty to call a medical expert was triggered in this case, and that the ALJ's assessment of pain and symptom evidence, and his finding of credibility, followed applicable legal standards and was supported by substantial evidence. [Doc. 12 at 8-12].

Plaintiff's bare assertion provides nothing for this Court to review. This assignment of error fails.

Plaintiff's brief in support of summary judgment reflects that Plaitniff's counsel harbors a fundamental misunderstanding regarding the nature of the proceedings before this Court. It is appellate in nature. It is incumbet upon Plaintiff to present to this Court arguments as to the legal errors supposedly committed by the ALJ. While practice before the Agency is non-adversarial, but rather inquisitorial, practice before the federal courts is not. See Sims v. Apfel, 530 U.S. 103, 110-11, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). It requires each party's advocacy for specific positions. Ostensible "jury arguments" about the facts -- as though this Court were to find facts anew -- are not helpful to either the Court or the Plaintiff. Counsel is encouraged to bring his practice in line with the ordinary advocacy expected in these proceedings.

## VII.  CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards, and that there is substantial evidence to support the ALJ's finding of no disability through the date of his decision.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 11] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 7] is **DENIED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: December 13, 2011

Martin Reidinger
United States District Judge